Smith
v.
Axtell et al.

JOHN SMITH, Administrator of SILAS AXTELL, deceased, v. SAMUEL L. AXTELL, HENRY AXTELL, and CHARLES ROFF and PHEBE his wife.

The bill should be framed to meet the case, so that the *allegata* and the *probata* may agree, with reasonable certainty. It is as important that this rule should be adhered to in this court as in a court of law.

Where the bill goes on an original agreement in writing, and does not mention the loss of it, so as to admit of any evidence in lieu of it; parol evidence of its contents, or a paper purporting to be a copy of it, is not sufficient: but the pleadings may be amended to get at the merits of the case.

If the original agreement has been lost, and due diligence has been used to recover it, but without effect; a copy may be received, or if there be no copy the party may resort to parol proof of the contents.

The complainant is competent to prove the loss.

But his testifying, that the paper was in his possession some time, and he left it with the arbitrators, (to whom the matter had been referred,) since which he has not seen it : that he has often searched for it among his own papers, the papers of his decedent, and wherever he supposed it probable it might be ound, but could not find it, and believes it lost or destroyed; and one of the arbitrators stating, that the original agreement was before the arbitrators at their first meeting, that he has seen it since, but does not know what has become of it, (the other two arbitrators not having been examined, or called on,)—is too indefinite to show the loss of the original agreement, and warrant the introduction of secondary evidence.

Where, after administration granted, it was found that the personal estate was insufficient to pay debts; and the elder children, having been advanced in money and goods, agreed with the administrators, in writing, to account for the advancement made to them, to save the real estate from being sold for the payment of debts, and to do justice to the younger children who had received nothing from their father; such an agreement is equitable in itself, and should be carried into execution.

And the fact, that after the agreement, the authority of the administrators who made it had been revoked, and administration granted to the present complainant, does not present any obstacle to the execution of the agreement.

SILAS Axtell, late of Morris county, died in 1823, intestate, leaving a widow and several children, viz. Samuel, Henry, Amzi, Phebe wife of Charles Roff, John, Jacob, and Jonathan— the two last being minors. He also left three grand-children, the offspring of his daughter Mary, late the wife of Daniel Thompson, 3d. Letters of administration were granted to Henry Ax-

tell, John Axtell and Charles Roff. The deceased left a small personal estate, and a farm in Mendham township of one hundred and sixty acres. The bill filed in this case sets forth, that the personal property was altogether insufficient to pay the debts of the decedent; and that the older children, having been advanced in money and goods, agreed to account for the advancements thus made, and thereby not only save the real estate from being sold for the payment of debts, but do justice to the younger children, who had received nothing from their father. In pursuance of this agreement, Henry Axtell, Charles Roff, and John Axtell, the administrators, and Samuel L. Axtell, the oldest son, entered into an article of agreement in writing, whereby they all agreed to make a settlement as heirs with the administrators; and if upon such settlement for money or property advanced to either of them, they or any of them should fall in debt, they pledged their respective shares of the realty to the administrators to secure the payment of the same, if it should be found necessary to pay the just debts of the deceased, or to make the other heirs equal. Under this agreement, Samuel settled with the administrators on the 28th February, 1824, (being the same day on which the agreement was made,) and acknowledged a balance due the administrators of one hundred and forty-four dollars and eighty-six cents. After this, the letters of administration that had been granted to Henry Axtell, John Axtell, and Charles Roff, were revoked, and administration was by consent committed to John Smith, the present complainant; and he alleges, that on taking an inventory there was a deficiency of personal assets of nearly seven hundred dollars, exclusive of the debts due from the children. The claim against Henry Axtell, under the aforesaid agreement, was referred to arbitrators, who awarded that he should pay the administrator four hundred dollars. Daniel Thompson, 3d, submitted the claim against his deceased wife to the same arbitrators, who reported that there was due from him to the administrator the sum of one hundred and ninety-four dollars and fifty-eight cents. The bill then charges, that Charles Roff, although his wife had had considerable advances from her father, after delaying the complainant on various pretences from time to time, at length refused to settle or make any allowance

whatever; and that the other heirs have also refused to pay the amounts so found due from them as aforesaid; and then prays that the said agreement may be enforced, and the defendants come to an account for the sums due respectively, and be decreed to pay the same. The bill was filed in July, 1825. None of the defendants having answered, or pleaded in any way, the complainant, in July, 1827, obtained an order to take depositions and proofs in support of his bill. Under this order, papers and documents were produced, and a number of witnesses examined; after which the cause was set down for argument exparte; and in October, 1829, an order was made referring it to a master to take an account against Charles Roff, and ascertain the amount of his indebtedness to the administrator, which indebtedness is said in the order satisfactorily to appear. After this, to wit, in October, 1830, Charles Roff and wife filed their answer to the bill, it is presumed with the complainant's consent. Their answer, so far as it is necessary to advert to it at this time, states that Silas Axtell, deceased, gave to his daughter, the wife of Charles Roff, after her marriage, sundry articles of personal property, as an outfit, amounting to, perhaps, one hundred and fifty dollars; but claims that it was an absolute gift and not an advancement, and that they are not bound to account for the same, there being no charge made in the account-book of the intestate. Charles Roff denies that there was such an agreement as is set out in the bill, and says that the instrument entered into was not under seal, and was simply to this effect, that the administrators individually would settle all demands that the estate had upon each, upon the same principles that Samuel Axtell would settle upon; which was, that he should be responsible for any demand that the estate might lawfully have upon him, and which might be made to appear by the books of account of the said deceased; and that it was upon that principle that Samuel settled. They further contend, that as the complainant was no party to the agreement, he has no right to proceed upon it, or take advantage of it in any way; or if he has, that he should proceed at law. They also allege that the complainant, since the filing of the bill, has sold part of the real estate under an order of the orphan's court, and has rendered no account of the same: they are

therefore unable to say, but they confidently think, that the personal assets, together with the proceeds of such sale, are sufficient to pay all the debts.

*Th. Frelinghuysen*, for complainant;

*I. H. Williamson*, for defendants.

THE CHANCELLOR. There does not appear to have been any additional testimony taken after filing this answer, and some important facts are not adverted to at all in the testimony taken exparte under the original order, and which has been used by both parties on the argument of the cause. The case comes up under very embarrassing circumstances, and in such a way as to render it impossible for the court to make a final disposition of it, and at the same time satisfy itself, or do justice between the parties. There are, however, one or two questions which may be as well disposed of at this as any other stage of the cause.

The first is, whether the agreement set out in the complainant's bill, and upon which his suit is founded, has been sufficiently and legally proved. It is contended by the defendants that it has not.

The bill mentions a written agreement, of the date of February 28th, 1824; and although it would seem as if it was intended to give only the substance and effect, and not the tenor of it, it is nevertheless set out *in hæc verba :* " This article of agreement, made," &c. It turns out from the evidence, that the original article was not produced before the master, but only a paper purporting to be a copy of it; and that upon the ground of the loss of the instrument, parol evidence of its contents, and also a paper purporting to be a copy, was received. It is contended, in the first place, that parol evidence of the contents of the paper, or any other secondary evidence, cannot be received, inasmuch as the bill goes upon the original agreement, and does not allege the loss of it, so as to admit of any evidence in lieu of the original article. This is technically correct. The bill should be framed to meet the case, so that the *allegata* and the *probata* may agree, with reasonable certainty. And it is as important

63

that this rule should be adhered to substantially in this court, as in a court of law. I am not, however, inclined to say that for this reason the testimony must be rejected, and the party turned out of court; for the pleadings may be amended, if necessary, and the object of the parties, as I understand it, is to get at the merits of the case.

Passing by this formal objection, the question before the court is, whether a proper foundation has been laid for the admission of secondary evidence. The allegation is, that the original is lost. If this be true, and due diligence has been used to recover it, but without effect, a copy may be received; or if there be no copy, the party may resort to parol proof of the contents of the instrument. It is agreed on all hands that there was an original agreement relating to the subject matter of this controversy. It was entered into in February, 1824, by Henry Axtell, Charles Roff, John Axtell, and Samuel L. Axtell. It was before the arbitrators, as appears by the testimony of Jesse Upson, esquire, and was not disputed by any of the parties. The complainant is called to prove the loss, and for this purpose he is competent. He says, the paper was in his possession a considerable time, and he left it with the arbitrators when they first met, since which he has not seen it. He has often searched for it, but could not find it. He has searched for it among his own papers, and among the papers of the deceased, and wherever he supposed it probable it might be found, but could not find it, and believes it lost or destroyed. Jesse Upson, one of the arbitrators, states that the original paper was before them, but he does not know what has become of it. Besides this, I do not discover any evidence of the loss of the paper; and although in this case I should be inclined rather to relax than to adhere strictly to the rule, I feel satisfied that this is altogether too indefinite to warrant the introduction of parol or secondary evidence. The complainant's testifying that he has searched for it among his papers, and the papers of the deceased, is not sufficient. He had before stated that he left it with the arbitrators, and had not seen it since. The search he made must have been merely for the sake of form, and not with any view of finding the instrument. It was left with the arbitrators, and it is remarkable that not one of them

has been called on with the view of ascertaining whether it was in their possession. Jesse Upson, it is true, was examined as a witness. He says he has never seen the original paper or agreement since the meeting of the arbitrators, and does not know what has become of it. Now this may be, and yet the paper be in his possession. He does not say that he has ever been called on to examine his papers, or that he has ever searched for it. The fact that he has not seen it, or does not know what has become of it, is no proof that it is not in his possession. The other two arbitrators with whom the paper was left, and in whose hands it is last traced, were not examined, nor does it appear that they have ever been called on, or that any inquiry has been made of them respecting it. It was attempted to be shown on the argument, that Jesse Upson was the active arbitrator, or the business man among them; and it was argued, that if he had not the instrument, it was scarcely supposable that either of the other arbitrators had. This is argument merely; for it does not appear that Judge Upson was the active man; we may presume so from our private knowledge of his business habits and of the general estimation in which he was held, but that furnishes no ground for a judicial opinion. It is shown, however, that even as it regards Judge Upson, the evidence is insufficient. It does not prove that the paper is not in his possession, and therefore the argument itself is unsound. Nor is the case aided by the complainant's stating he had searched for it wherever he supposed it probable it might be found. He should have stated where he searched, that the court might judge whether it was in good faith. If such general allegations were admitted, it would supercede the necessity of pointing out any particular places, and a salutary rule of law would be easily evaded, if not wholly destroyed.

The conclusion is, that there is no sufficient foundation for admitting secondary evidence, whether it be a copy or parol. In this case, the paper produced as a copy cannot be considered as such. It has not been compared. The witnesses who state it to be a copy, speak only from their recollection of the original, and not from any actual knowledge. But if it were an actual compared copy, it would not alter the case. It would be secondary

evidence still, and inadmissible without first satisfactorily show-ing the loss of the original, which has not been done.

Notwithstanding this conclusion, I am unwilling to preclude the rights of the complainant and dismiss his bill. I incline to think he has equity in his case, if it can be reached. If the agreement is proved to be such as is set out in the bill, I see no good reason why it should not be enforced. That the adminis-trators have been changed, does not present any serious difficulty to my mind. The object of the agreement was to enable the administrators to satisfy the debts and exonerate the land. It was made in good faith, and was equitable in itself, and justice requires that it should be carried into execution, if properly proved.

The court would recommend that the parties consent to the further taking of testimony respecting the loss of the paper, and that the defendants also produce evidence to the fact alleged by them, that the administrator has sold land of which he has made no account. This is important to settle the rights of the parties. This cause has been conducted with considerable irregularity and tardiness; but as the course pursued has been consented to by both parties to reach a proper result, and to have the cause settled on the merits ; and as the defendants have been let in to answer after default, and after testimony taken against them, the hope is indulged that the course intimated by the court will be adopted. If it should not, I will listen to an application on the part of the complainant for leave to take further testimony, and be inclined to grant him such aid as may be consistent with the rules and practice of the court.